IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MARSALETTE S. WINSLEY,** | ) |
| Plaintiff, | ) |
| v. | ) No. 06 C 6837 |
| **COOK COUNTY d/b/a COOK COUNTY DEPARTMENT OF PUBLIC HEALTH,** | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marsalette S. Winsley filed a three count complaint against defendant Cook County d/b/a Cook County Department of Public Health. Count I alleges defendant violated her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Count II alleges defendant violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. by treating her differently and discriminating against her because of her race. In count III, plaintiff alleges defendant violated Title VII and the ADA when it retaliated against her for requesting accommodations and filing an EEOC charge. Defendant moves for summary judgment on all counts. For the following reasons, the motion is granted.

I.

The following facts are not disputed. Since October 2001 plaintiff worked as a Public Health Nurse I for defendant. She was

assigned as a Genetics and Perinatal Hepatitis Coordinator in Oak Park.  In July 2003, plaintiff took a leave of absence to have a hysterectomy and kidney surgery.  While plaintiff was on leave, the Genetics and Perinatal Hepatitis Coordinator position was given to a Caucasian nurse.  Upon her return in December 2003, plaintiff was reassigned as a Family Case Manager (a "field nurse") in Maywood, but was still classified as a Public Health Nurse I.

As a field nurse, plaintiff facilitated care for pregnant women and their newborns in certain communities of the western suburbs.  Plaintiff would go to the homes of her clients to conduct developmental assessment of the children; make sure the children were vaccinated; and, if they showed signs of delayed development, arrange for early intervention.  Driving is a requirement of this job position.  Attendance is also a requirement of the job.

On March 23, 2004, plaintiff was involved in an automobile accident.  Plaintiff did not obtain emergency medical attention or go to the hospital at the time of the accident.  After the accident, plaintiff contacted her psychiatrist, Dr. Michael Bednarz, by telephone because she was having panic attacks and could not sleep.  Plaintiff then went to see her primary care physician because she had some pain in her head and along her left side that lasted for approximately two or three weeks.  After an office visit with Dr. Bednarz, in the beginning of April, she was diagnosed with post-traumatic stress disorder ("PTSD").  Although

plaintiff already suffered from a general anxiety disorder and had a history of depression, and was being treated with medication and psychotherapy, she claims she was suffering from unusual panic attacks and that her depression worsened after the accident. Dr. Bednarz switched plaintiff's medications over time, but plaintiff cannot recall if he gave additional medication or increased her prescribed dosage of Paxil at the time he diagnosed her with PTSD.

Upon Dr. Bednarz's recommendation, plaintiff took a leave from work from April 6 through the end of the month. In a note dated April 24, 2004, Dr. Bednarz informed defendant that as of April 30, 2004, plaintiff could return to work part-time with minimal work-related driving. Dr. Bednarz placed the driving restriction on plaintiff because she would panic when she got into a car. Defendant honored the requested driving restriction and allowed her to work part-time in the Markham office, which was closer to her house, for approximately six weeks.

On June 2, 2004, plaintiff was informed that she could not continue to work part-time and remain classified as a Public Health Nurse I past the requested accommodation period, and she was expected to resume her previous duties on June 7. In the event that plaintiff was not able to resume her duties, she was required to provide a physician's note and would be demoted to the classification of Registered Nurse I to the only site with vacancies for such an assignment. On June 9, 2004, plaintiff

received another communication providing "our original agreement was for a 4 week period of accommodation. This Friday marks the end of 6 weeks and we can no longer continue to grant you the special assignment." The memorandum sent to plaintiff also set forth plaintiff's employment options with defendants as

> 1. Request a disability leave of absence and pursue benefits through the County's Annuity and Benefits Office.
> 2. Resume full-time duties of a Public Health Nurse in Maywood, including field duties.
> 3. Request reassignment with demotion to a clinic nurse position in SDO. . . .
> 4. Request reassignment to part-time status (20 hours per week) in SDO clinics in the category of Registered Nurse I. This pays the In-house registry rate of $30 per hour without benefits. This option just became available due to a recent resignation. You would be able to continue benefits under COBRA by paying premiums.
> All the above options must be decided with the approval of your physician, EAP, and County Medical.

On June 11, 2004, Dr. Bednarz sent a note to defendant, stating that plaintiff was still experiencing severe symptoms of PTSD and continued to have difficulty driving, and plaintiff took the first option explained in the June 9 memo. Her leave started in June.

Plaintiff returned to work in December 2004 and was assigned back to the Maywood office. At that time, plaintiff was driving only to and from the office, not out in the field. Plaintiff continued to take medication, but felt that the drive to and from work was overwhelming and draining.

From March through May of 2005, plaintiff did not go to work. In a note dated May 10, 2005, Dr. Bednarz wrote that plaintiff

4

could return to work on May 16, 2005 as long as she (1) was limited to driving only to and from work; (2) worked only 32 hours per week with Wednesday off; and (3) if possible, was relocated to within 15 miles of her residence. Plaintiff wanted to work in Markham or Bridgeview, which would have been closer to her home. Defendant honored the first two accommodation requests for approximately eight weeks. Around that time, plaintiff received an "unsatisfactory" in her evaluation for attendance and timeliness.

Over time, plaintiff has also grown concerned about "strife at work" created by co-workers coming into her work space and inquiring as to why she had been off work and her activity schedule. By the end of June 2005, plaintiff complained to her supervisor that her co-workers were making it uncomfortable for her to work. The supervisor had the assistant supervisor speak with the co-workers at issue, but plaintiff wanted the supervisor to have a staff-wide meeting. The supervisor told her they could not have a meeting for that purpose, but that she would speak to the co-workers individually if they continued to interrupt plaintiff's work. At the next nursing staff meeting, plaintiff announced that she wanted to say something to her co-workers about interrupting her work to ask personal questions, but the supervisor said it was not the right time. When plaintiff refused to stop, plaintiff was asked to leave the meeting, which she did, and went on a leave of

5

absence the following day. Plaintiff also filed an EEOC charge in June 2005.

On June 30, 2005, Dr. Bednarz informed defendant that plaintiff could not return to work unless defendant granted plaintiff the restrictions he previously requested. In response, plaintiff received a letter from defendant requesting she and her physician fill out a "Physical Demands Analysis," which highlighted her essential job functions, in order to determine whether she could return to work and perform the essential job functions. The form indicated that plaintiff's position as a field nurse required her to drive two hours out of an eight hour work day. In a note dated November 13, 2005, Dr. Bednarz responded that plaintiff's "only restriction is no more driving than to & from work, otherwise full duty."

When plaintiff returned to work around Thanksgiving 2005, she was assigned to work as a clinic nurse in Maywood. Plaintiff filed a Union grievance and at a meeting on or about November 22, defendant agreed to reassign plaintiff to the Bridgeview office if Dr. Bednarz cleared her to do the two hours of driving required as a field nurse.

In the month of June 2006, plaintiff was absent from work approximately 20 days due to a house fire. On May 22, 2007, plaintiff's supervisor gave plaintiff a memorandum noting the absenteeism over the previous eleven weeks and asking for an

improvement over the following two months. The memo provided that "[w]ith this much absenteeism, it becomes difficult for you to meet the needs of your clients." On May 25, 2007, without applying for a formal leave of absence, plaintiff was absent from work; she never returned to work, instead submitting her letter of resignation on October 15, 2007.

II.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502 (7th Cir. 2004); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A. Count I

Plaintiff first alleges defendant failed to accommodate her disability and discriminated against her in violation of ADA. "To make out a claim under the ADA, an individual must show: 1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Stevens v. Illinois Dep't Of Transp.*,

7

210 F.3d 732, 736 (7th Cir. 2000) (citations omitted). Under the first element of a *prima facie* disability claim, an individual is considered to have a disability under the ADA if 1) she has an impairment that substantially limits one or more of her major life activities; 2) she has a record of such an impairment; or 3) her employer regards her as having such an impairment. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007) (citing 42 U.S.C. § 12102). Plaintiff argues that she is disabled under the third prong.

Plaintiff fails to point to any facts in the record, aside from her own deposition testimony, establishing she was regarded as disabled within the meaning of the ADA. Plaintiff's own testimony states her medication helped calm her down enough to tolerate driving to work, she continued to drive to work, and Dr. Bednarz's notes to defendant provide plaintiff's suggested restrictions were related only to her ability to drive after arriving to work. There is simply no evidence indicative of defendant's alleged belief that she was substantially limited. *See, e.g.*, *Sinkler v. Midwest Prop. Mgmt., Ltd.*, 209 F.3d 678, 684-85 (7th Cir. 2000) ("'Getting to and from work assignments' is not a major life activity."). In the absence of objective evidence that speaks to defendant's perception of whether plaintiff was substantially limited in her major life activities, it is not reasonable to infer that defendant regarded plaintiff as disabled.

Moreover, plaintiff also fails to point to any facts establishing plaintiff was a qualified individual under the ADA. Indeed, defendant specifically moved for summary judgment on this ground and plaintiff's brief is completely silent in response. Accordingly, I find plaintiff has failed to establish the existence of a triable issue with respect to whether plaintiff was (1) disabled, and (2) a qualified individual under the ADA. Defendant is entitled to summary judgment on plaintiff's ADA claims in count I.

B. Count II

Although plaintiff's brief claims count II alleges claims of discrimination based on race as well as sex and age, that is not consistent with her complaint, which only seeks relief for racial discrimination under Title VII.[1]  Plaintiff may not "amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 606 (7th Cir. 2000) (quotation omitted)  Therefore, I only consider whether an issue of material fact exists with respect to plaintiff's race-based claim under Title VII.

Title VII, 42 U.S.C. § 2000e-2(a)(1) makes it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

---

[1]Nor does plaintiff's EEOC charge allege discrimination based on sex or age.

9

employment, because of such individual's race." Plaintiff may proceed under either the direct or indirect method of proof in order to prove her race discrimination claim. *Rogers v. City of Chicago*, 320 F.3d 748, 753-54 (7th Cir. 2003). Under the direct method of proof, a plaintiff may establish discrimination through direct and circumstantial evidence. Direct evidence "is essentially an 'outright admission' that a challenged action was undertaken for one of the forbidden reasons covered in Title VII." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005). Circumstantial evidence "allows a jury to infer intentional discrimination by the decisionmaker." *Rogers*, 320 F.3d at 753-54 (citations omitted). Under the indirect method of proof, plaintiff has the initial burden of establishing a *prima facie* case of discrimination; if plaintiff meets this burden the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case of race discrimination, plaintiff must establish that (1) she is a member of a protected class; (2) her job performance met her employer's legitimate expectations; (3) she was subject to a materially adverse employment action; and (4) the employer treated similarly situated employees outside the protected class treated more favorably. *Id.*

The only evidence set forth by plaintiff in support of her discrimination claim is her own deposition testimony. At the outset, this is insufficient to make out a *prima facie* case under the indirect method as plaintiff has not established the existence of a similarly situated employee outside the protected class who was treated more favorably. "To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citations omitted). In making this determination, I must look at all relevant factors, including whether the employees were "subject to the same standards." *Id*. (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)). The plaintiff bears the burden of proving that she was similarly situated to the employee whose treatment she compares to her own. *Id*. at 680.

In this case, plaintiff does not provide any objective evidence that establishes one Mary Ann Hanley as a similarly situated employee. Plaintiff simply provides that "she had some type of medical issue similar to mine" and admits not knowing "[e]xactly what it was" or about her attendance record. Moreover, plaintiff testified that Hanley told her that she did not complete the "Physical Demand Analysis" and instead found another job. In light of plaintiff's testimony, plaintiff has not established a

11

genuine issue of material fact with respect to the existence of a similarly situated employee. Accordingly, plaintiff has failed to make a *prima facie* case under the indirect method of proof.

Plaintiff also claims her testimony constitutes direct and circumstantial evidence sufficient to establish race discrimination under the direct method of proof, but fails to elaborate further. No citations or further argument are included in her brief. Her statement of material facts does not reveal any direct evidence against defendant, instead relying heavily on the fact that plaintiff believed Hanley was a similarly situated employee that was treated more favorably. Moreover, plaintiff does not dispute that she received a negative evaluation concerning her attendance or that driving was listed as an essential part of the job. Plaintiff has simply not set forth sufficient facts from which to extrapolate "a convincing mosaic of discrimination against the plaintiff." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). Accordingly, defendant's motion for summary judgment is granted with respect to plaintiff's race discrimination claim.

### C. Count III

In count III, plaintiff alleges she suffered retaliation as a result of filing an EEOC charge and attempting to have defendant accommodate her disabilities. In order to establish a claim for retaliation under Title VII under the direct method of proof, plaintiff must show (1) she engaged in statutorily protected

12

activity, (2) she suffered an adverse employment action by her employer, and (3) there was a causal connection between the two. *Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007) (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). Under the indirect method of proof, plaintiff must show "(1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). The ADA also prohibits retaliation against any individual who has opposed an act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a). Plaintiff must make the same showing under either the direct or indirect methods of proof as under Title VII. *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786-88 (7th Cir. 2007).

Plaintiff cannot make a *prima facie* case for retaliation under Title VII or the ADA under the indirect method of proof in light of the absence of any evidence of a similarly situated employee who did not engage in statutorily protected activity and was treated more favorably. Plaintiff's testimony does not reveal whether Hanley was, in fact, similarly situated, or whether Hanley

13

failed to engage in any statutorily protected activity under either the ADA or Title VII.

Nor can plaintiff establish the existence of a triable issue on her retaliation claim under the direct method of proof. Plaintiff argues that her supervisor created a hostile work environment in order to retaliate for her 2005 charge. In order to establish the existence of a hostile work environment, plaintiff must show the harassment was severe and pervasive enough to alter the conditions of her environment and create a hostile and abusive work environment. *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).

Once again, the only evidence submitted by plaintiff in support of her claim is her own testimony, and this fails to establish a triable issue with respect to hostile work environment or retaliation. First, there is no evidence that plaintiff's supervisor or defendant leaked that plaintiff had been away on "mental leave" to her co-workers, as argued by plaintiff. Plaintiff testifies that her co-workers would ask her about her leave, but not that they were told by management about her condition. Second, the fact that plaintiff's co-workers asked her about the reason she had been on leave, both in and outside the presence of patients, does not in itself rise to the level of severity to alter the conditions of her employment or create an abusive working environment. Even assuming it did, plaintiff's

supervisor specifically agreed to have someone talk to the individual co-workers implicated by plaintiff in order to prevent them from asking again. The only thing plaintiff's supervisor refused to do was call a staff meeting on this subject, but never declined to approach the individuals responsible. Finally, receiving a memorandum concerning her attendance (even assuming this materially altered the conditions of plaintiff's employment or work environment – which it plainly does not do) approximately two years after she filed the EEOC charge also does not establish the existence of a causal connection between the protected activity and the alleged retaliation. Accordingly, the motion for summary judgment on count III is granted.

III.

For the foregoing reasons, defendant's motion for summary judgment is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 29, 2008